UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

v.  Case No.: 8:20-cr-242-MSS-CPT

**ELVIN JOSUE ROJAS SILES**

_____ /

## SENTENCING MEMORANDUM IN SUPPORT OF A DOWNWARD VARIANCE

Defendant, Elvin Josue Rojas Siles, by and through undersigned counsel, submits this memorandum in support of a sentence below the advisory sentencing guideline range. In support, he shows as follows:

### BACKGROUND

COVID-19 had touched most of the world by the summer of 2020, and Costa Rica was one of many countries suffering from the economic consequences of this global pandemic. Elvin Rojas Siles was working in Tortuguero, Costa Rica, as a fisherman and day laborer in an attempt to pay for probation that he was on following imprisonment for a series of terrible decisions he made as a teenage boy. PSR ¶¶ 65-66. He was six years out of prison, but was still on supervision and had been compliant with the

1

conditions. He was particularly concerned about meeting all of the requirements of his supervision because he was also trying to save his Costa Rican citizenship, in order to stay in the country that his family had emigrated to from Nicaragua when he was only four-years-old in order to find better economic opportunities. PSR ¶ 13, 43. Compliance with supervision was an important prerequisite to keep his legal status in the country. The pandemic had brought the economy of Costa Rica to a near standstill, and Mr. Rojas Siles was struggling to find any way to make money in order to support himself and make his probation payments. This is what was weighing on him when he made the choice to commit this crime.

In July of 2020, a recruiter approached Mr. Rojas Siles while he was doing some fishing work in Tortuguero.[1] This recruiter offered $60,000 to make a round trip from Costa Rica to Colombia; the advance pay was $5,000. When it was time to make the trip, this recruiter sent an unknown man to pick up Mr. Rojas Siles, where he was taken to an unfamiliar house with at least four other unknown men. One of these men was his future co-defendant Javier Orozco-Perez. After some days in this house, the recruiter instructed Mr. Rojas Siles to come with him. The recruiter drove the two of them to an unknown spot to pick up fuel, and then on to a location where two boats and

---

[1] The facts in this section come from reports provided by the United States, attached as composite **Exhibit A**.

2

four other men (including Mr. Orozco-Perez) were waiting for them. The recruiter provided Mr. Rojas Siles with a GPS, a notebook with geo-coordinates, and a satellite phone with pre-programmed phone numbers. The men launched the two boats together but, after a few miles of travel, everyone except Mr. Rojas Siles and Mr. Orozco-Perez split off in one of the boats, leaving the two men alone to travel on to Colombia.

When the two men arrived in Colombia they were intercepted by two boats filled with six or seven men. Mr. Rojas Siles and Mr. Orozco-Perez boarded a boat with four men on it and traveled to a house in the jungle, where they stayed for weeks. Unknown people brought them food and supplies. Finally, yet another unknown man picked them up from that house and took them to a boat which was pre-loaded with sacks of drugs. At that boat, they met their third co-defendant, Yason Moreno-Gomez. Equipped with the same GPS, notebook, and phone that the recruiter had provided them for the trip over, the three men boarded the pre-loaded boat and left to return to Costa Rica.

The mariners aboard the boat had very little information about the man that hired them, and even less information about the larger organization that employed their recruiter. They didn't know any of the people who housed them and gave them food, both in Costa Rica and Colombia, or who the other men were at either of their two departure points. They had no ownership

stake in the drugs aboard the boat. The three men set out together and traveled for three days, sharing various jobs aboard the boat, before the Coast Guard interdicted their boat and transported to the United States to face criminal charges.

## SENTENCING GUIDELINES

In this case, United States Probation has calculated a total offense level of 31, and a criminal history category of I, resulting in an advisory guideline range of 108 to 135 months. PSR ¶ 72. Mr. Rojas Siles objects to a lack of minor role adjustment at PSR ¶ 23, and believes that paragraph should reflect a two-level downward adjustment because he played a minor role in this large, international drug conspiracy. Such an adjustment would also trigger an adjustment to the base offense level. Ultimately, Mr. Rojas Siles submits that an accurate application of the Sentencing Guidelines should result in an advisory range of 63-78 months.

This Court should find that he is entitled to a downward adjustment for minor role under U.S.S.G. § 3B1.2. This guideline provision lays out a non-exhaustive list of five factors that a court should consider when deciding whether a defendant qualifies for an adjustment for playing a mitigating role in an offense:

    I.    The degree to which the defendant understood the scope and structure of the criminal activity,

II. the degree to which the defendant participated in planning or organizing the criminal activity,
III. the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority,
IV. the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts,
V. the degree to which the defendant stood to benefit from the criminal activity.

In this instance, all five factors weigh in favor of granting Mr. Rojas Siles a minor role adjustment. Mr. Rojas Siles was one of three men arrested on a single boat, but this scheme involved, at a minimum, fourteen other people. He did not know the scope and structure of the larger scheme to ship cocaine, which arguably encompasses the dozens of boats interdicted every year that pass through the Middle District, and the untold additional boats that are never stopped that all make up the billion dollar South American drug trade. Even treating this single voyage as one individual scheme that is wholly disconnected from the universe of the larger, international drug trade, Mr. Rojas Siles and his co-defendants were transported between boats and locations that he didn't select, organize, or recognize, because this plan was developed and directed by some other unidentified person or persons. He had no role in planning these trips, or any decision-making authority in this process. He did not secure housing in either Costa Rica or Colombia, or arrange for the support that he got in the form of food, transportation, or

supplies. He was merely a mariner, recruited and paid by someone else, who was undoubtedly working for someone even more powerful, with no control over the complex logistics of this voyage. He did not have an ownership stake in the drugs on the boat and was instead given a one-time payment for transport that was a tiny fraction of the market value of the cocaine. He is a perfect example of the minor participant contemplated by the commission in Application Note 3 of U.S.S.G. § 3B1.2: "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks." For these reasons, this paragraph should reflect a two-level reduction for minor role under U.S.S.G. § 3B1.2.

Because he qualifies for an adjustment as a result of having a mitigating role, Mr. Rojas Siles is also entitled to a downward adjustment under U.S.S.G. § 2D1.1(a)(5). This guideline provision states, in relevant part, that defendants who receive an adjustment under U.S.S.G. § 3B1.2 are also entitled to a corresponding downward adjustment of their base offense level. Mr. Rojas Siles is entitled to a three-level decrease if this Court finds, based on the weight of the drugs, that he would ordinarily be a level 34 under the Drug Quantity Table.

Probation correctly calculated a base level offense level of 34 based on the converted weight of the drugs involved in this offense. After applying adjustments for his role as a captain (+2), "safety valve" (–2), mitigating role

(–2), acceptance of responsibility (–2 and –1), and the adjustment to the base offense level that is required under U.S.S.G. § 2D1.1(a)(5) (–3), this Court should find that Mr. Rojas Siles has a total offense level of 26. The resulting advisory guideline range is 63-78 months.

**REQUEST FOR A DOWNWARD VARIANCE**

This Court should impose a below-Guidelines sentence to account for the nature of this offense, and Mr. Rojas Siles's history and characteristics. Specifically, the circumstances that drove him to participate in this venture weigh toward leniency, while his lack of ties to the United States and certain future deportation suggest that this Court does not need to impose a lengthy sentence to deter Mr. Rojas Siles from committing future crimes against the United States or to protect the public. Certainly, Mr. Rojas Siles should be punished for this offense. A sentence of multiple years in the Bureau of Prisons would promote respect for the law and provide just punishment, while taking into account the desperate situation that motivated him to join in this venture. It is also noteworthy that there is a high likelihood that the Burau of Prisons will designate Mr. Rojas Siles to serve his time in a Criminal Alien Requirement ("C.A.R.") facility, also known as a "contract prisons."[2] In a C.A.R. facility, he is less likely to have access to programming

---

[2] Federal Bureau of Prisons, Contract Prisons, https://www.bop.gov/about/facilities/contract_facilities.jsp. *See also* Background on Federal

7

or adequate healthcare, and more likely to be exposed to solitary confinement and other inhumane conditions (such as "vermin infestations, spoiled food, a shortage of medical staff, and cells that [are] routinely flooded with raw sewage").[3] For these reasons, a prison sentence that is below the advisory guideline range would be sufficient, but not greater than necessary, to accomplish the purposes of sentencing detailed at 18 U.S.C. § 3553(a).

**WHEREFORE** the Defendant, Mr. Rojas Siles, prays this Court will impose a sentence that is below the advisory sentencing guideline range.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

***/s/ Sara L. Mieczkowski***
Sara L. Mieczkowski
Assistant Federal Defender
Florida Bar No. 0085143
400 North Tampa Street Suite 2700
Tampa, FL. 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: sara_mieczkowski@fd.org

---

Criminal Alien Requirement (CAR) Program, http://www.geogroup.com/CAR_Background_January_2021.pdf.

[3] Jonathan Beltzer, *A New Study Uncovers Troubling Information About Immigrant-Only Prisons*, The New Yorker (Jan. 13, 2019), https://www.newyorker.com/news/daily-comment/a-new-study-uncovers-troubling-information-about-immigrant-only-prisons.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of April 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court, which will send a notice of the electronic filing to:

AUSA Tereza Z. Ohley.

*/s/ Sara L. Mieczkowski*
Sara L. Mieczkowski
Assistant Federal Defender